IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| PHL VARIABLE INSURANCE COMPANY, | CIVIL NO. _____ |
| Plaintiff, | |
| v. | ORIGINAL COMPLAINT |
| U.S. BANK NATIONAL ASSOCIATION, as Securities Intermediary, and the 2008 MARTHA HIGUERA IRREVOCABLE TRUST, by and through its trustee BNC NATIONAL BANK | |
| Defendant. | |

PHL Variable Insurance Company ("Phoenix"), by and through its attorneys, files

this Original Complaint against U.S. Bank National Association, as securities

intermediary, ("USB") and the 2008 Martha Higuera Irrevocable Trust (the "Higuera

Trust"), by and through its trustee BNC National Bank ("BNC"), as follows:

## I.      THE PARTIES

1.

PHL Variable Insurance Company is a Connecticut insurance company authorized

to transact the business of insurance in Minnesota.  Phoenix is organized under the laws

of Connecticut and its principal place of business is located in Hartford, Connecticut.

Phoenix's headquarters is located at One American Row, Hartford, Connecticut 06102-

5056.  Phoenix's high level officers direct, control, and coordinate the corporation's

activities from Hartford, Connecticut.  Phoenix is a citizen of Connecticut within the meaning and intent of 28 U.S.C. § 1332.

2.

Upon information and belief, U.S. Bank National Association is a national bank with its principal office located in Minneapolis, Minnesota and is a citizen of Minnesota within the meaning and intent of 28 U.S.C. § 1332.  USB may be served at its principal office at 800 Nicollet Mall, Minneapolis, MN 55402 or by serving its chief executive officer, Richard K. Davis, at 800 Nicollet Mall, Minneapolis, MN 55402.

3.

Upon information and belief, the Higuera Trust is a trust governed by the laws of Minnesota and may be served through its trustee.  Upon information and belief, BNC National Bank is a national bank with several branch offices in Minnesota, and may be served at 333 S. Seventh St. Suite 150, Minneapolis, MN 55402 or by serving its chief executive officer, Gregory K. Cleveland, at 2425 East Camelback Road Suite 100, Phoenix, Arizona 85016.  Upon information and belief, BNC is the sole trustee of the Higuera Trust.

## II.    JURISDICTION AND VENUE

4.

This suit presents a case of actual controversy within the diversity jurisdiction of this Court.

5.

Phoenix is a citizen of the State of Connecticut within the meaning and intent of

28 U.S.C. § 1332.

6.

USB is subject to the jurisdiction of the Court.  USB is a national bank with its principal office in Minnesota.

7.

BNC is subject to the jurisdiction of the Court.  Upon information and belief, BNC is a national bank with its principal office in Arizona.

8.

This Court has diversity jurisdiction over this action, as Phoenix, on the one hand, and USB and BNC, on the other hand, are situated in and citizens of different states and, as set out more fully below, the amount in controversy exceeds $75,000, exclusive of interest, attorneys' fees, and costs.  Therefore, this Court has jurisdiction by virtue of 28 U.S.C. § 1332.

9.

This Court has jurisdiction over this declaratory judgment action pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. §§ 2201 and 2202, which grant the United States District Courts jurisdiction to declare the "rights and other legal relations of any interested party making such declaration, whether or not further relief is or could be sought."

10.

Venue is proper for this action.  Among other things, USB's principal office is located in Minnesota and the insurance policy at issue was procured in Minnesota and is governed by Minnesota law.  In addition, all or a portion of the events giving rise to the

causes asserted herein occurred in the State of Minnesota.

### III.   FACTUAL BACKGROUND

11.

Phoenix is, and during all relevant times has been, in the business of underwriting and issuing policies of life insurance and is authorized to transact the business of insurance in the State of Minnesota.

12.

In recent years, a derivative market for life insurance has developed in which existing life insurance policies are sold to third parties who lack an insurable interest in the life of the insured.  Typically referred to as a "life settlement" or "senior settlement," these sales are generally lawful, assuming that the policy was procured for legitimate purposes and that there was an insurable interest at the policy's inception.

13.

As this derivative market has developed; however, there has been a proliferation of life insurance policies that are not sought for legitimate insurance needs but rather for re-sale to strangers in the secondary market.  Policies procured under these circumstances have become known as stranger originated life insurance ("STOLI") policies.  STOLI policies are illegal wagering contracts that lack an insurable interest at inception.  As such, STOLI policies are void *ab initio*.

14.

In many cases, STOLI policies are initiated with fraudulent representations on the insurance application.  Insurers, in an effort to prevent issuing STOLI policies, require

insurance applicants to respond to specific questions during the application process regarding the purpose of the insurance sought.   STOLI promoters will falsely answer these questions in order to obtain the insurance sought.   Additionally, in order to maximize their profit, STOLI promoters frequently provide insurers with false information regarding an insured's financial status to obtain a policy with a larger face amount.   In some cases, insureds are unaware of the misrepresentations made on the application and during the application process.   In other cases, insureds are induced to participate in the transaction through promises of "free insurance," by cash payments from STOLI promoters, or by promises of future payments upon the sale of the policy.

15.

STOLI schemes have become so prevalent that they have been the subject of consumer fraud alerts issued by numerous state insurance departments, including the California Department of Insurance.[1]   STOLI schemes have also been specifically prohibited by statute in Minnesota.  *See* Minn. Stat. Ann. 60A.078., et seq.

16.

Martha Higuera ("Ms. Higuera"), a resident of California, was approached by a stranger while shopping in a store.   This individual informed Ms. Higuera that because she was over 70 years of age, she qualified for a free life insurance policy and offered her $5,000 to participate in the application process.   Ms. Higuera, who has limited English

---

[1] Cal. Dep't of Ins., Seniors: Senior Advisory on STOLI or SPINLIFE Life Insurance Schemes, *available at* http://www.insurance.ca.gov/0150-seniors/0100alerts/strangerownedlifeins.cfm; http://www.insurance.ca.gov/0150-seniors/0100alerts/upload/SA0108Stoli2.pdf.

language skills, agreed to participate, and signed a number of documents presented to her by this individual.  Upon information and belief, these documents included documents establishing the Higuera Trust and an application for a Phoenix life insurance policy. The Higuera Trust was established under the laws of Minnesota and acted through its administrative trustee, BNC National Bank.  The Higuera Trust, through its trustee, applied to Phoenix seeking the issuance of a $5 million insurance policy insuring the life of Ms. Higuera.

17.

During the application process, Phoenix requested material information regarding, among other things, Ms. Higuera's financial and medical background, the purpose of the insurance sought, whether there were any formal or informal programs under which the applied-for policy would be transferred to a third party, whether there was any intent or understanding that a third party would obtain an interest in the applied-for policy and whether Ms. Higuera had received any inducements in connection with the application for, or the purchase of, the policy.

18.

During the application process, it was represented to Phoenix that Ms. Higuera had a net worth of $9.1 million and an annual income of $410,000.  It was also represented that the $5 million insurance policy was sought in connection with Ms. Higuera's estate planning, that there was no understanding or agreement that the policy would be sold to a third party or that a third party would obtain any legal or equitable right in the policy and that Ms. Higuera had not received any financial inducements for submitting the life

6

insurance application.    These representations were all false.    Specifically, upon

information and belief, Ms. Higuera is a retiree living on Social Security who does not

possess an income or net worth sufficient to qualify for a $5 million life insurance policy.

Indeed, the insurance was not sought for the purpose of estate planning, but was sought

with the intent and understanding that it would be sold to a third party on the secondary

market.   Moreover, contrary to these representations, Ms. Higuera's participation in the

application process was induced by a promise of a $5,000 payment.   Finally, the Higuera

Trust was not established by Ms. Higuera to serve her estate planning needs, but was

established to act as a straw man for third party investors who sought to circumvent

applicable insurable interest laws of Minnesota and California through the use of an

irrevocable life insurance trust.   As such, it lacked an insurable interest in Ms. Higuera's

life.

19.

In completing the Application, Ms. Higuera and the Higuera Trust knew that each

was required to provide complete, accurate and honest answers to the questions presented

on the Application.   Ms. Higuera and the Higuera Trust also knew that Phoenix would

rely upon the answers recorded on the Application in determining whether Ms. Higuera

was insurable and qualified for the insurance sought through the Application.   The false

representations made during the application process were material to Phoenix's

acceptance of the risk assumed.

20.

The application, executed by Ms. Higuera and the Higuera Trust, contained the

following affirmation:

> I have reviewed this application, and the statements made herein are those of the proposed insured and all such statements made by the proposed insured in Part I or and in Part II of this application are full, complete, and true to the best knowledge and belief of the undersigned and have been correctly recorded.

Ms. Higuera and the Higuera Trust, through its trustee at the time, executed the application on March 17, 2008.

### 21.

On the basis of the statements and representations on the application and in reliance upon Ms. Higuera's and the Higuera Trust's complete candor, honesty and openness in disclosing information in response to the questions presented during the application process, Phoenix issued life insurance policy number 97528228 (the "Policy") to the Higuera Trust, with an effective date of April 7, 2008. The Policy's death benefit is $5,000,000.

### 22.

On or about September 30, 2009, the Higuera Trust, through its trustee at the time, executed a Designation of Ownership Form (the "Higuera Ownership Form") designating USB, as securities intermediary, as the new owner of the Policy. The Higuera Ownership Form was executed by USB on September 30, 2009 and delivered to Phoenix on or about December 10, 2009. The Higuera Ownership Form was acknowledged by Phoenix on or about December 14, 2009, and a letter was mailed to the Higuera Trust's trustee acknowledging USB as the new owner of the Policy.

23.

Had Ms. Higuera and the Higuera Trust provided accurate responses to the questions presented during the application process, Phoenix would not have issued the Policy or would have done so on materially different terms.  As a result of the Policy's issuance, Phoenix has suffered damages, including but not limited to, commissions Phoenix paid to its sales representatives that it would not have paid, but for the sale.

24.

Phoenix brings this action seeking rescission of the Policy and an order declaring the Policy void *ab initio*.

## IV.   CAUSES OF ACTION

### COUNT I – DECLARATORY JUDGMENT
### RESCISSION DUE TO LACK OF INSURABLE INTEREST
### (Against USB)

25.

Phoenix incorporates herein each of its allegations contained in Paragraphs 1–24 above.

26.

Pursuant to the Federal Declaratory Judgment Statue, 28 U.S.C. § 2201, Phoenix seeks a declaratory judgment that the Policy is null, void, and rescinded *ab initio* due to the lack of an insurable interest.  The Policy was purchased with the intent to benefit a third party, which lacked the requisite insurable interest in Ms. Higuera's life at the time of issuance.  The Policy's issuance violates the letter and spirit of Minnesota and California law on insurable interest and is inconsistent with both states' public policy of

prohibiting the wagering on the lives of others.  The Application for and the purported ownership of the Policy by the Higuera Trust is merely a sham transaction intended to circumvent and violate applicable insurable interest laws and public policy.  Indeed, neither the Higuera Trust nor the investors who funded the transaction have an insurable interest in Ms. Higuera's life.  The Policy is, therefore, void *ab initio* and is of no force and effect from its inception.

27.

Phoenix seeks a declaratory judgment that the Policy is null, void, and rescinded *ab initio* due to the lack of insurable interest and that as a result of said rescission, Phoenix may deposit with the Clerk of the Court all premiums paid on the Policy along with required interest, if any, pending further dispensation by the Court.

28.

Phoenix has been damaged as a result of the Policy's issuance, in that it has incurred expenses and costs in connection with, among other things, its underwriting and issuance of the Policy, payments of commissions and fees in connection with the issuance of the Policy, administration and servicing of the Policy, investigation of the misrepresentations and concealments detailed above, and commencement of this action to enforce its rights.

29.

In light of the foregoing damages, expenses, and costs incurred by Phoenix, Phoenix should be permitted to retain the premiums paid for the Policy as an offset against such damages and costs and/or disgorgement of Defendant's ill-gotten gains.

Without such retention, offset, and/or disgorgement, restitution of the parties to their pre-contract positions would be impossible.

30.

Notwithstanding the foregoing, Phoenix stands ready, willing, and able to refund or otherwise make payment of all or any portion of the premiums paid for the Policy as directed by the Court in accordance with Phoenix's demand for rescission of the Policy and restitution of the parties to their pre-contract positions insofar as is possible and equitable.

31.

Accordingly, Phoenix hereby fully and unconditionally tenders the Policy's premiums to the Court's registry.

32.

Phoenix also seeks recovery of its attorneys' fees pursuant to the Federal Declaratory Judgment Statute.

**COUNT II – DECLARATORY JUDGMENT**
**RESCISSION DUE TO MATERIAL MISREPRESENTATION**
**(Against USB)**

33.

Phoenix incorporates herein each of its allegations contained in paragraphs 1–32 above.

34.

Pursuant to the Federal Declaratory Judgment Statute, 28 U.S.C. § 2201, Phoenix seeks a declaratory judgment that the Policy is null, void,  and rescinded *ab initio* due to

11

the fraudulent, willfully false and/or material misrepresentations and omissions made by Ms. Higuera and the Higuera Trust.

35.

Phoenix has been damaged as a result of the foregoing material misrepresentations, in that it has incurred expenses and costs in connection with, among other things, its underwriting and issuance of the Policy, payments of commissions and fees in connection with the issuance of the Policy, administration and servicing of the Policy, investigation of the misrepresentations and concealments detailed above, and commencement of this action to enforce its rights.

36.

In light of the foregoing damages, expenses, and costs incurred by Phoenix, Phoenix should be permitted to retain the premiums paid for the Policy as an offset against such damages and costs and/or disgorgement of Defendant's ill-gotten gains. Without such retention, offset, and/or disgorgement, restitution of the parties to their pre-contract positions would be impossible.

37.

Notwithstanding the foregoing, Phoenix stands ready, willing, and able to refund or otherwise make payment of all or any portion of the premiums paid for the Policy as directed by the Court in accordance with Phoenix's demand for rescission of the Policy and restitution of the parties to their pre-contract positions insofar as is possible and equitable.

38.

Accordingly, Phoenix hereby fully and unconditionally tenders the Policy's premiums to the Court's registry.

39.

Phoenix also seeks recovery of its attorneys' fees pursuant to the Federal Declaratory Judgment Statute.

**COUNT III – FRAUD**
**(Against the Higuera Trust)**

40.

Phoenix incorporates herein each of its allegations contained in paragraphs 1–39 above.

41.

The Higuera Trust procured the Policy for the purpose of selling it in the secondary market.  As stated above, upon information and belief, the Higuera Trust made fraudulent misrepresentations regarding, among other things, the true purpose of the Policy and Ms. Higuera's financial condition.  The Higuera Trust intended that Phoenix rely on these misrepresentations in issuing the Policy.

42.

Each fraudulent misrepresentation was material to Phoenix's decision to issue the Policy and Phoenix justifiably relied on these fraudulent misrepresentations in issuing the Policy.  Indeed, Phoenix would not have issued the Policy had it known the true facts surrounding it.

43.

Phoenix has incurred substantial damages as a result of the wrongful conduct of the Higuera Trust, including, but not limited to, costs and expenses associated with the issuance of the Policy.

44.

Phoenix is also entitled to an award of punitive damages based on the wanton, malicious, deliberate and/or grossly negligent conduct of the Higuera Trust as described herein.

## COUNT IV – NEGLIGENT MISREPRESENTATION
### (Against the Higuera Trust)

45.

Phoenix incorporates herein each of its allegations contained in paragraphs 1–44 above.

46.

The Higuera Trust supplied false information to Phoenix in connection with the application for the Policy.  The Higuera Trust owed a duty to Phoenix and failed to exercise reasonable care in making the representations.  Additionally, or alternatively, the Higuera Trust made misrepresentations with conscious disregard for their truth or falsity.

47.

Phoenix reasonably and justifiably relied on these misrepresentations and suffered damages as a result.

48.

Phoenix has incurred substantial damages as a result of the wrongful conduct of the Higuera Trust, including, but not limited to, costs and expenses associated with the issuance of the Policy.

## V.    PRAYER FOR RELIEF

WHEREFORE, due to lack of insurable interest and the above-referenced fraudulent, willfully false and/or intentionally misleading representations, PHL Variable Insurance Company demands judgment against U.S. Bank National Association, as securities intermediary, as follows:

(a)    an order declaring and adjudging the policy of life insurance bearing Policy Number 97528228 to be null and void and rescinded, *ab initio*;

(b)    an order directing that Phoenix deposit with the Clerk of the Court all premiums paid on the Policy along with required interest, if any;

(c)    an order that the Clerk of the Court pay to Phoenix from the premiums deposited an amount equal to: 1) the commissions paid by Phoenix to the agents or sales representatives arising out of or relating to the sale of the Policy; and 2) any damages incurred by Phoenix as a result of the Policy's issuance and subsequent investigation, including attorneys' fees and expenses; and

(d)    an order awarding cost of suit and reasonable attorneys' fees and such other relief as the Court deems equitable and just to Phoenix.

WHEREFORE, due to the above-referenced fraud and/or negligent misrepresentations, PHL Variable Insurance Company demands judgment against the Higuera Trust, as follows:

(a)     all actual damages to which Phoenix may be entitled;

(b)     punitive damages due to the Higuera Trust's intentional fraud;

(c)     reasonable and necessary attorneys' fees and other costs incurred in this action;

(d)     pre-judgment and post-judgment interest at the maximum lawful rate;

(d)     costs of court; and

(e)     such other and further relief as the Court deems equitable and just to Phoenix.

DATE: April 7, 2010                    FRUTH, JAMISON & ELSASS, PLLC


By    s/  Adam A. Gillette
         Terence M. Fruth (#32517)
         Adam A. Gillette (#0328352)
         3902 IDS Center
         80 South Eighth Street
         Minneapolis, MN 55402
         Telephone:   (612) 344-9700
         Facsimile:   (612) 344-9705

         *ATTORNEYS FOR PLAINTIFF*
         *PHL VARIABLE INSURANCE COMPANY*

16

OF COUNSEL:

EDISON, MCDOWELL & HETHERINGTON LLP

Thomas F.A. Hetherington, Texas Bar #24007359
*tom.hetherington@emhllp.com*
Jarrett E. Ganer, Texas Bar #24055520
*jarrett.ganer@emhllp.com*
Phoenix Tower
3200 Southwest Freeway, Suite 2920
Houston, Texas 77027
Telephone: (713) 337-5580
Facsimile: (713) 337-8850